UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 22-cr-201 (RBW) |
| : | |
| MALIK SHELTON : | |

### UNITED STATES'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Malik Shelton (hereinafter, the "Defendant"). On September 16, 2024, the Defendant pleaded guilty to Count 1 of the Superseding Indictment, charging Unlawful Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Count 3 of the Superseding Indictment, charging Unlawful Possession of a Firearm and Ammunition by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1).

For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 71 months of incarceration to be followed by 36 months of supervised release.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2022, the Metropolitan Police Department ("MPD") executed a District of Columbia District Court search warrant at an apartment in Northwest D.C. This search warrant was conducted as part of an investigation into a drug trafficking crew that operated in the area of 7th and O Streets, NW. *See United States v. Brian Rice, et al.*, 22-cr-164 (RBW). During this search, officers recovered numerous firearm magazines, including some high-capacity magazines; ammunition; one cell phone; and items commonly used for narcotics distribution, including four scales; packaging; sifters and plates with residue; gloves; and an empty bag of mannitol (a cutting agent).

On May 27, 2022, at approximately 9:13 a.m., Witness-1 called MPD to report that the Defendant was sleeping inside of Apartment 401. Witness-1 further reported that the Defendant had been in possession of a firearm the night before but was unsure of whether the Defendant still had a firearm. Further investigation revealed that the Defendant had, in essence, taken over that apartment and allegedly, when asked to leave, the Defendant became threatening and violent.

Thus, officers went to the apartment. Eventually, the door opened and the Defendant stood in the doorway. While being asked for identification, the Defendant stepped out of the apartment into the hallway and shut the door. The Defendant had on his person a satchel. Law enforcement searched the satchel and recovered:

- 28 pills containing Oxycodone weighing approximately 8.57 grams;
- Approximately 6.4 pills containing methamphetamine weighing approximately 2.12 grams;
- Approximately 2.35 grams of a substance containing cocaine base;
- Approximately 8.65 grams of powder containing fentanyl; and
- $756 in U.S. currency.

Law enforcement searched the apartment. Inside the apartment was a living room. In the living room was an air mattress on which the Defendant slept. Next to the mattress was an end table, and next to that was a couch. Officers found under a couch cushion (specifically, the cushion closest to the armrest that was closest to the end table) a black 9mm Glock 19 firearm with a green extended magazine and switch designed to make the firearm fully automatic. The high-capacity magazine was fully loaded with 31 rounds, and the firearm had one round in the chamber. The serial number was BCKB643. On top of the end table was paperwork with the Defendant's name.

As part of his plea, the Defendant acknowledged that he possessed the drugs he recovered with the intent to distribute them, and that he possessed the firearm in connection with his

possession with intent to distribute the drugs.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
    a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b) To afford adequate deterrence to criminal conduct;
    c) To protect the public from further crimes of the defendant; and
    d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
    a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i) Issued by the Sentencing Commission . . . ; and
        ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
    a) Issued by the Sentencing Commission . . . and

      b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

### III.    GUIDELINES CALCULATION

The Government agrees with the PSR writer that that the Defendant's Total Offense Level is 23, his Criminal History Category is III, and his Guideline range is 57 to 71 months of incarceration with 36 months of Supervised Release. *See* PSR ¶¶ 67, 75, 137, 147.

### IV.    ARGUMENT

As stated above, the United States respectfully requests that the Court sentence the Defendant to a term of 71 months of incarceration, followed by 36 months of Supervised Release. This sentence is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

    **1.    The Nature, Circumstances, and Seriousness of the Offense**

The circumstances of this case are extremely serious. Although all of the drugs that the Defendant possessed with the intent to distribute pose dangers, the danger is significantly heightened when one of the drugs at issue is fentanyl. According to the DEA, fentanyl "is similar to morphine but about 100 times more potent [. . . .] Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and

cocaine, increasing the likelihood of a fatal interaction [. . . .]" *See* DEA, *Facts about Fentanyl*, https://www.dea.gov/resources/facts-about-fentanyl. Startingly, "two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage." *Id.* The lethality of fentanyl is reflected in nationwide statistics: roughly 97,309 people in this country died of drug overdoses in the 12-month period ending in April 2024. *See* CDC National Center for Health Statistics, *Provisional Drug Overdose Death Counts* (based on provisional data available as of September 1, 2024).[1] Of these deaths, roughly 65,787 (or about 68 percent) involved synthetic opioids (of which fentanyl is one). *Id.* (By comparison, in 2022, 46,728 people in the United States died of firearms. *See* JHU Bloomberg School of Public Health, *Continuing Trends: Five Key Takeaways from 2023 CDC Provisional Gun Violence Data* (September 12, 2024)).[2] And, thanks in part to people like the defendants in this case, our community has been pummeled by fentanyl: in 2022, Washington, D.C., had an opioid overdose death rate of 48.9 people per 100,000—third among all the states and D.C. only to West Virginia and Delaware. *See* KFF, *Opioid Overdose Death Rates and All Drug Overdose Death Rates per 100,000 Population (Age-Adjusted)* (2022 timeframe).[3]

Drugs themselves are bad enough, but mixing firearms with drugs only heightens the danger. *Compare Smith v. United States*, 508 U.S. 223, 240 (1993) (noting that "drugs and guns are a dangerous combination"). And as this Court is well aware, our community has recently faced staggering levels of gun violence. D.C. saw 274 homicides in 2023, the highest in more than two decades. *See* MPD, *District Crime Data at a Glance*.[4] About 84 percent of the 203 homicides in

---

[1] https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm.
[2] https://publichealth.jhu.edu/center-for-gun-violence-solutions/2024/continuing-trends-five-key-takeaways-from-2023-cdc-provisional-gun-violence-data.
[3] https://www.kff.org/other/state-indicator/opioid-overdose-death-rates.
[4] https://mpdc.dc.gov/page/district-crime-data-glance (last visited May 18, 2024).

2022 involved the use of a firearm. *See* MPD, *Annual Report 2022*, 17.[5] And the fact that the Defendant's firearm was a machinegun makes it *still more* dangerous: machineguns are generally less accurate and, therefore, pose a heightened and serious risk to bystanders. *See* Ted Oberg, et al., *"Incredibly Serious": Deadly, Unpredictable Switches Add to DC's Gun Toll; Prosecutors Seek Change*, NBC 4 Washington (Nov. 29, 2023).[6] The Defendant's alleged abuse visited up on the apartment's resident—that is, the Defendant became threatening and violent toward that person upon being asked to leave—only serves to underscore the seriousness of the Defendant's conduct in this case.

### 2. The Defendant's History and Characteristics

The Defendant has numerous convictions, including for conduct similar to the instant case. He was convicted of a violation of the Bail Reform Act in 2016 and marijuana possession three years later. *See* PSR ¶¶ 69, 70. He was also convicted in 2019 of gun and drug charges. *See* PSR ¶ 71; 2019-CF2-10007. Notably, according to the *Gerstein* affidavit filed in connection with that case, the Defendant reportedly dragged an officer while trying to flee police in his car.[7] In 2022, he was again convicted of drug and gun offenses. *See* PSR ¶ 72.[8] As part of his plea in that case, he acknowledged that he possessed a 5.56 caliber pistol, a large capacity magazine, and cocaine.

Despite these prior convictions, the Defendant continues to reoffend. Indeed, at the time of the instant conduct, he was on release in his prior gun and drug cases. The fact that his prior

---

[5] https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR_2022_lowres.pdf.
[6] https://www.nbcwashington.com/investigations/incredibly-serious-deadly-unpredictable-switches-add-to-dcs-gun-toll-prosecutors-seek-change/3482548/.
[7] According to the PSR in that case, the Defendant apologized for his actions and stated "there was a guy with a gun in my face was telling me to get out the car. I didn't know what was going on so I reversed the car and pulled off. The car got rammed and I hopped out and continued to run. I was then apprehended and then they identified themselves as police officers." Additionally, the sentencing in that case was continued so that, according to the docket, "Government Counsel can fulfill their Brady obligations."
[8] The PSR states that according to the police report in that case, the landlord had reported that the Defendant pointed a firearm at maintenance workers. It appears, according to testimony, that the individual who brandished the firearm was not on the lease—i.e., the Defendant or the leaseholder's boyfriend.

convictions and sentences have not prevented continued criminal conduct demands a sentence at the top of the Guideline range.

    **3.    The Need to Promote Respect for the Law and Deterrence**

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The United States respectfully submits that the need to deter not only the Defendant, but also others, weighs in favor of a sentence at the high end of the range.

Such a sentence accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. As applied to the Defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case. This is particularly true where, as here, the Defendant has yet to be deterred, despite having been prosecuted previously. With respect to general deterrence, this recommended sentence promotes respect for the law and the safety of the community by serving as a deterrent to brazen conduct such as that perpetrated by the Defendant and seeks to ensure that others are not similarly emboldened.

    **4.    Other factors**

The United States' recommended sentence is also justified to protect the public from the Defendant, who keeps reoffending. It is also justified in order to hopefully give the Defendant the ability to avoid reoffending in the future.

**V.    CONCLUSION**

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to 71 months of imprisonment, followed by 36 months of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        UNITED STATES ATTORNEY

By:    */s/ SOLOMON EPPEL*
        SOLOMON EPPEL
        DC Bar No. 1046323
        Assistant United States Attorney
        601 D Street, NW
        Washington, D.C. 20530